IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMONWEALTH MOTOR INC. and JIAN HU, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, et. al., <br><br> Defendants. | Civil Action No. 19-875-CFC |

John P. Deckers, JOHN P. DECKERS, Wilmington, Delaware; Alex G. Isbell, PALLADINO, ISBELL & CASAZZA, Philadelphia, Pennsylvania

*Counsel for Plaintiffs*

Dylan J. Steinberg, Assistant United States Attorney, Wilmington, Delaware

*Counsel for Defendants*

**MEMORANDUM OPINION**

February 8, 2022
Wilmington, Delaware

                                                  */s/ Colm F. Connolly*
                                                  COLM F. CONNOLLY
                                                  CHIEF JUDGE

      Plaintiffs Commonwealth Motor, Inc. (CMI) and Jian Hu filed this lawsuit against Defendants,[1] seeking judicial review of the denial by the United States Citizen and Immigration Service (USCIS) of a Form I-129 Petition for Nonimmigrant Worker filed by CMI on behalf of Hu, a citizen of China. D.I. 10 ¶¶ 1, 42. CMI filed the petition to qualify Hu under the H-1B Program and to hire him for the position of sales engineer. D.I. 10 ¶ 1. "The H-1B program is designed to allow professionals from other countries who are employed in 'specialty occupations' to work in the United States on a temporary basis." *Gupta v. Sec'y U.S. Dep't of Lab.*, 649 F. App'x 119, 120 (3d Cir. 2016). USCIS ultimately denied CMI's petition. Plaintiffs seek an order compelling USCIS to rescind its denial, approve CMI's H-1B petition, and designate Hu a H-1B nonimmigrant. D.I. 16. Pending before me are the parties' cross motions for summary judgment. D.I. 16; D.I. 19.

---

[1] Defendants Merrick Garland, Attorney General; Alejandro Mayorkas, Secretary of Homeland Security; Tracy Renaud, Senior Official Performing the Duties of the Director of United States Citizenship and Immigration Services; Connie Nolan, Acting Associate Director, Service Center Operations Directorate; and Laura Zuchowski, Director of the Vermont Service Center have been sued in their official capacities. Thus, pursuant to Fed. R. Civ. P. 25(d), the named defendants were automatically substituted as parties upon their succession to the offices named in the First Amended Complaint.

## I. BACKGROUND

### A. Procedural and Factual History

CMI is a Delaware company that engages in "international automobile trading, new and used vehicle sales, vehicle rental and leasing, collision repair and general maintenance, vehicle financing and lending, vehicle insurance services, and vehicle inter-state registry services." D.I. 20 ¶ 2; D.I. 24-1 ¶ 2. Jian Hu is a citizen of China. D.I. 10 ¶ 42. Hu previously lived in the United States on F-1 status but has since returned to China. D.I. 10 ¶ 42.

In April 2018, CMI filed a Petition for a Nonimmigrant Worker (Form I-129). The petition sought to qualify Hu under the H-1B Program so that CMI could hire him for the position of "sales engineer" for a three-year period. USCIS48–51. CMI alleged in the petition that Hu held a bachelor's degree in Engineering with a major in Radio Technology from Hunan University. USCIS58, 71. And it stated in a letter filed with the petition that it expected Hu to perform the following tasks as a Sales Engineer:

- Evaluate the subject automobiles from both technical and sales aspects, and create auto sales reports based on the inspections; apply professional knowledge to assist the company in pricing by analyzing the subject automobiles from technical aspects;

- Explain the features of selected automobiles to customers, help customers with best solutions

2

      and promote sales by applying the principles of customer services;

- Compare and contrast features of the automobiles being traded and create products rating reports for the company in order for the company to better oversee the market and target potential customers;

- Conduct products improvement recommendation, and communicate with outside parties, such as garages, about vehicle service, repair, and promotion;

- Conduct research about up-to-date industry trends and help the company to better understand the market from the technical aspect by providing internal training about automobile technology; [and]

- Prepare inspection principles and manuals, and participate in products inspections with the company's inspectors from time to time, and supervise their work; give suggestions to the company about the procedures of inspection.

USCIS70. CMI also included with its petition a list of the tasks "Sales Engineers typically perform" according to the Department of Labor's Occupational Outlook Handbook:

- Prepare and deliver technical presentations explaining products or services to existing and prospective customers

- Talk with customers and engineers to assess equipment needs and to determine system requirements

3

- Collaborate with sales teams to understand customer requirements and provide sales support

- Secure and renew orders and arrange delivery

- Plan and modify products to meet customer needs

- Help clients solve problems with installed equipment

- Recommend improved materials or machinery to customers, showing how changes will lower costs or increase production

- Help in researching and developing new products[.]

USCIS69–70. The petition also attached descriptions of the sales engineer position from the Occupational Outlook Handbook, the summary of the position from the Department of Labor's database of worker requirements called O*Net, Hu's academic records, and Hu's resume. USCIS75–104.

On August 24, 2018, USCIS issued a Request for Evidence (RFE), asking CMI for evidence establishing that the sales engineer position met the statutory and regulatory definition of a specialty occupation. USCIS179, 184. In response to the RFE, CMI submitted a supplemental letter of support and various documents as

4

accompanying evidence.[2] *See* USCIS194–96. On December 26, 2018, USCIS denied CMI's application on the grounds that CMI had not sufficiently shown that the offered position was a specialty occupation. USCIS561–69. Plaintiffs filed the Complaint in this case on May 9, 2019, D.I. 1; and, on July 19, 2019, USCIS reopened review of Plaintiffs' petition and issued a second RFE, USCIS579.

In the second RFE, USCIS requested "evidence that details the specific duties of the proffered position and the nature of [CMI's] business" and noted that the evidence CMI had submitted up to that point was insufficient because it showed that the duties of the position "are related to general automobile sales, . . . appear to be general in nature, . . . and do not appear to require the theoretical and practical application of a body of highly specialized knowledge," and thus the evidence "[did] not support [CMI's] contention that this position is a specialty

---

[2] Specifically, CMI included a block and line organizational chart of CMI's hierarchy, documents from the Occupational Outlook Handbook and Occupational Outlook Quarterly, thesaurus and dictionary entries for "normally" and "typically," an "[i]nformational packet from [CMI] explaining the international automobile trading process," a letter from China Import Car Association to CMI, "[v]arious industry materials and reports relating to international automobile trading practices and processes," "[s]ample purchase document sets, including freight agreements, invoices, packing lists, and bills of lading," sample manufacturing and sales contracts, copies of automobile titles listing CMI as the registered owner, copies of employment advertisements for sales engineer positions at other companies, documents "relating to [CMI's] two Risk/Financial Counselors" (including their diplomas, transcripts, and paystubs), a lease agreement for CMI, CMI's income tax returns, and "literature about [CMI]." USCIS194–96.

5

occupation." USCIS582. On October 14, 2019, CMI responded to the second RFE with an opinion letter from Professor Fernando Tovia. USCIS593–645.

On January 31, 2020, USCIS issued a Notice of Intent to Deny the Petition, stating that Tovia's opinion letter "fail[ed] to describe the position's duties with sufficient detail, or to establish that the job duties require an educational background, or its equivalent, commensurate with a specialty occupation." USCIS646, 65061. After CMI responded with an additional opinion letter from Tovia, USCIS662–69, USCIS denied the reopened petition, USCIS3–19. Plaintiffs then filed an Amended Complaint in this lawsuit, D.I. 10, and the parties filed the competing motions for summary judgment now before me, D.I. 16, 19.

## II.   LEGAL STANDARDS

Under the Administrative Procedure Act (APA), "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. "Summary judgment is the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Blintz v. Fed. Emergency Mgmt. Agency*, 413 F. Supp. 3d 349, 360 (D. Del. 2019) (internal quotation marks and citations omitted). The APA requires a district court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law[.]" 5 U.S.C. § 706(2)(A). This

"deferential standard . . . presume[s] the validity of agency action." *SBC Inc. v. FCC*, 414 F.3d 486, 496 (3d Cir. 2005) (internal quotation marks and citation omitted; original alteration). A court must "not . . . substitute its judgment for that of the agency in an APA challenge." *NVE, Inc. v. Dept. of Health and Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006) (internal quotation marks and citation omitted).

Under the arbitrary and capricious standard, an agency's decision will not be vacated unless it "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007) (citation omitted). An agency's ruling is not arbitrary and capricious where the agency "reach[ed] its decision by examin[ing] the relevant data . . . [and] articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011) (internal quotation marks and citations omitted). An agency's findings must be upheld "unless the evidence not only supports a contrary conclusion, but compels it." *Sheng v. Att'y General of U.S.*, 365 F. App'x 408, 410 (3d Cir. 2010) (citation omitted).

## III. ANALYSIS

Resolution of the competing motions turns on whether USCIS abused its discretion in concluding that the sales engineer position offered by CMI was not a "specialty occupation." Under the Immigration and Nationality Act (INA), an employer can seek to employ a foreign national "in a specialty occupation" under the H-1B program. 8 U.S.C. § 1101(a)(15)(H)(i)(b). The employer and the petitioning employee have the burden of proof to show that the occupation in question is a "specialty occupation." 8 U.S.C. § 1361.

The INA defines "specialty occupation" as "an occupation that requires (A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). Enabling regulations issued by the Department of Homeland Security pursuant to the INA also define "specialty occupation." The definitions provided in the regulations are similar but not identical to the definition set forth in the INA. Section 214.2(h)(4)(ii) of the regulations defines a "specialty occupation" as

> an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the

8

> arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. 214.2(h)(4)(ii). And § 214.2(h)(4)(iii)(A)(1)–(4) of the regulations provides that

> [t]o qualify as a specialty occupation, the position must meet one of the following criteria:
>
> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
> (3) The employer normally requires a degree or its equivalent for the position; or
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. 214.2(h)(4)(iii)(A)(1)-(4).

Plaintiffs argue that USCIS's denial of Hu's petition was arbitrary and capricious because CMI's sales engineer position is "a specialty occupation as a matter of law" under § 214.2(h)(4)(ii) of the regulations, D.I. 17 at 9, and the position meets the criteria set forth in § 214.2(h)(4)(iii) of the regulations, D.I. 17 at 12.

9

### A. Specialty Occupation under 8 C.F.R. § 214.2(h)(4)(ii)

Plaintiffs argue that "the record in this case compels the conclusion that CMI's position is a specialty occupation as a matter of law because it is an engineering position." D.I. 17 at 4. According to Plaintiffs, "the plain language of [8 C.F.R. § 214.2(h)(4)(ii)] unequivocally states that 'engineering' occupations are specialty occupations without any qualification." D.I. 17 at 10. But that's not what the regulation says. The regulation states that a "specialty occupation" is "an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor . . . ." § 214.2(h)(4)(ii). It then provides a non-exclusive list of fields of human endeavor. *Id.* One of those fields is engineering. *Id.* Other listed fields include "physical sciences," "social sciences," and "the arts." *Id.* These are clearly fields, and not, as Plaintiffs would have it, occupations.

USCIS reasonably interpreted and applied this definition of occupation. After reviewing the record, USCIS explained:

> a range of educational credentials, including many different kinds of engineering degrees in what appear to be completely unrelated fields, such as chemical, biomedical, or computer hardware engineering could qualify an individual for the position of a Sales Engineer. . . . [W]orkers who have a degree in business, but who have little or no sales experience, may become sales engineers.

USCIS6. It concluded:

10

> in order to establish a specialty occupation, a close correlation between the required "body of highly specialized knowledge" and the particular position must be established. Therefore, [Plaintiffs'] assertion that engineering in a single field of study, without establishing how the body of specialized knowledge obtained from an "engineering degree" in so many disparate fields and/or disciplines is necessary to perform the duties of the position, is insufficient to establish that an engineering degree in any discipline directly relates to the duties and responsibilities of the particular position of a Sales Engineer[.]

USCIS7. This conclusion is neither arbitrary nor capricious.

### B.   Criteria of 8 C.F.R. 214.2(h)(4)(iii)(A)

Plaintiffs' second argument is that "substantial evidence in the record would compel a reasonable mind to conclude that the actual nature of CMI's sales engineering position renders it a specialty occupation pursuant to 8 CFR §214.2(h)(4)(iii)(A)(1), (2), and (4)." D.I. 17 at 12. But whether a reasonable mind would disagree with USCIS's decision is of no moment. USCIS's decision is presumed to be valid, *SBC*, 414 F.3d at 496, and can only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law," 5 U.S.C. § 706(2)(A). By asking me to set aside USCIS's decision on the basis of what a reasonable mind could conclude, Plaintiffs are asking me to impermissibly "substitute [my] judgment for that of the agency[.]" *See NVE*, 436 F.3d at 190 (internal quotation marks and citation omitted). My review must "focus[] on the agency's decision making process, not on the decision itself." *Id.* If USCIS "has applied the procedures for rulemaking required by law and reached

11

a rational conclusion," it is not my prerogative to set aside the action—regardless of whether a reasonable mind could have concluded differently. *See id.*

Largely ignoring this standard of review, Plaintiffs emphasize their disagreement with the conclusion reached by USCIS rather than identifying errors in USCIS's process of reaching its conclusion. *See* D.I. 17 at 12–18. For example, Plaintiffs argue that

> [h]ad USCIS honestly and objectively applied the record in this case to its facts it would have been unable to avoid the objective fact that the [Department of Labor's] research concludes that sales engineers must usually have a technical background equivalent to a baccalaureate degree in engineering and that 63% of sales engineers surveyed by [Department of Labor] have at least a bachelor's degree in engineering.

D.I. 17 at 13 (quotation marks omitted). Here, Plaintiffs have identified no specific failure in USCIS's process. And, as an aside, the inverse of Plaintiffs' statistic is that 37% of sales engineers do not have a bachelor's degree, so USCIS's conclusion that a bachelor's degree is not the normal minimum requirement for entry into sales engineering is entirely rational.

As another example, Plaintiffs argue that there is more than a "preponderance of evidence" that the sales engineering position here is "a sophisticated position" and that "Tovia's letters also objectively confirm the uniqueness and complexity of this position." D.I. 17 at 15. Plaintiffs conclude that "any reasonable fact finder would be compelled to approve CMI's petition based on both 8 CFR §214.2(h)(4)(iii)(A)(2) and (4), and that USCIS'[s] denials in this

12

case are therefore arbitrary, capricious, and contrary to law." D.I. 17 at 17. The crux of Plaintiffs' argument is that there is sufficient evidence for a reasonable fact finder to reach a different conclusion. But,

> [t]o determine whether an agency acted arbitrarily and capriciously, a court looks to whether the agency relied on factors outside those Congress intended for consideration, completely failed to consider an important aspect of the problem, or provided an explanation that is contrary to, or implausible in light of, the evidence.

*NVE*, 436 F.3d at 190. Thus, it is of no moment that a different conclusion could have been reached by a different reasonable fact finder because "[r]eversal is appropriate only where the administrative action is irrational or not based on relevant factors." *Id.*

Based on the Certified Administrative Record, D.I. 18, it is apparent that USCIS considered the relevant factors in a rational way. USCIS offered a detailed discussion of how and why it concluded that Tovia's letters did not support Plaintiffs' argument that Hu's position was a specialty occupation. *See* USCIS8–10. Plaintiffs offer no argument that USCIS used a flawed process or relied on irrelevant factors.³ In short, USCIS properly applied the rules and regulations

---

³ Plaintiffs' final argument is that USCIS's reliance on the Fifth Circuit's decision in *Defensor v. Meissner*, 201 F.3d 384 (5th Cir. 2000), was "arbitrary, capricious, and contrary to law" and "warrants granting the Plaintiffs' relief[.]" D.I. 17 at 20. But *Defensor* is not cited in USCIS's final decision, so there is no basis on which to conclude that USCIS even relied on this case in its final decision at issue here.

13

governing H-1B visa applications, thoughtfully considered the evidence presented by Plaintiffs, and reached a rational conclusion. *See id.*

## IV. CONCLUSION

For the reasons discussed above, I will grant Defendants' motion for summary judgment and will deny Plaintiffs' motion for summary judgment.

The Court will enter an Order consistent with this Memorandum Opinion.